# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
VINCE E. LEWIS,
Defendant and Appellant.

S260598

Second Appellate District, Division One
B295998

Los Angeles County Superior Court
TA117431

July 26, 2021

Justice Groban authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger, and Jenkins concurred.

PEOPLE v. LEWIS

S260598


Opinion of the Court by Groban, J.


Senate Bill No. 1437 (Stats. 2018, ch. 1015; Senate Bill 1437) eliminated natural and probable consequences liability for murder and limited the scope of the felony murder rule. (Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e), as amended by Senate Bill 1437.) Senate Bill 1437 also added section 1170.95 to the Penal Code,[1] which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.

In this case, we are asked to decide two questions specific to section 1170.95, subdivision (c): (1) may superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief?; and (2) when does the right to appointed counsel arise?

Here, the trial court considered the record of conviction *without* appointing counsel and summarily denied defendant Vince E. Lewis's section 1170.95 petition. The Court of Appeal concluded this procedure was proper. Contrary to the Court of Appeal's decision, we conclude that the statutory language and legislative intent of section 1170.95 make clear that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that

---

[1] All undesignated statutory references are to the Penal Code.

1

only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether "the petitioner makes a prima facie showing that he or she is entitled to relief." (§ 1170.95, subd. (c).)

Nevertheless, we conclude that the deprivation of Lewis's right to counsel under subdivision (c) of section 1170.95 was state law error only, tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). The parties dispute whether the trial court's failure to appoint counsel can be deemed harmless on this record. We decline to reach that issue. We instead reverse the Court of Appeal's judgment and remand the cause to the Court of Appeal for an evaluation of prejudice under *Watson* in the first instance.

## I. BACKGROUND

### A. Factual and Procedural History

In 2012, defendant Lewis, along with codefendants Ariana Coronel and Mirian Herrera, were convicted of killing fellow Easy Riders gang member Darsy Noriega for her apparent disloyalty to their gang.[2] At their trial, former codefendant Amy Aleman testified that Noriega was ordered to attend a gang meeting, which had been called by Lewis, on the night of her death. During the meeting, Lewis told Aleman, Coronel, Herrera, and Noriega to accompany him to buy beer, which they

---

[2]     The brief summary of facts is drawn from the Court of Appeal's prior opinion in Lewis's direct appeal. (*People v. Lewis* (July 14, 2014, B241236) [nonpub. opn.] (*Lewis I*).) In this matter, the Court of Appeal took judicial notice of *Lewis I*. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1133, fn. 1 (*Lewis II*).)

did. After leaving the liquor store, Lewis drove around, eventually parking on a street near an alley. After Lewis parked, Aleman, Herrera, and Noriega got out of the car and walked down the alley; Lewis and Coronel remained in the car. In the alley, Herrera shot Noriega to death; Noriega was hit by approximately ten bullets. The prosecution's gang expert offered testimony that "in general a gang meeting is required to decide whether a member needs to be disciplined and only one person in the gang, the 'shot caller,' can call such a meeting." (*Lewis I*, *supra*, B241236.)

The jury convicted Lewis, Coronel, and Herrera of Noriega's first degree murder. (§ 187, subd. (a).) The jury further found that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(c)) and that Herrera personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). Lewis was sentenced to 25 years to life.

Lewis, Coronel, and Herrera appealed. (*Lewis I*, *supra*, B241236.) While their appeal was pending, we decided *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*). *Chiu* "held that natural and probable consequences liability cannot extend to first degree premeditated murder because punishing someone for first degree premeditated murder when that person did not actually perpetrate or intend the killing is inconsistent with 'reasonable concepts of culpability.'" (*Gentile*, *supra*, 10 Cal.5th at p. 838, quoting *Chiu*, at p. 165; see generally *Chiu*, at pp. 165–166.)[3] *Chiu* further explained, "When a trial court instructs a

_____

[3]    As we stated in *Gentile*, Senate Bill 1437 superseded *Chiu*, *supra*, 59 Cal.4th 155 insofar as *Chiu* upheld aider and abettor

jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." (*Chiu,* at p. 167.) Stated differently, "[d]efendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premeditated murder." (*Ibid.*)

In relevant part, the *Lewis I* court agreed with Lewis that, under *Chiu,* the trial court erred by instructing the jury that it could convict him of Noriega's murder if he aided Herrera in an assault on Noriega with force likely to produce great bodily injury and that murder was the natural and probable consequence of the assault. (*Lewis I, supra,* B241236.) However, quoting *Chiu, supra,* 59 Cal.4th at page 167, the *Lewis I* court concluded the error was harmless beyond a reasonable doubt because the record showed that Lewis directly aided and abetted Herrera in the deliberate, premeditated murder of Noriega. (*Ibid.*)

We denied Lewis's petition for review of *Lewis I.*

## B. Senate Bill 1437

Effective January 1, 2019, the Legislature passed Senate Bill 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was

_____

liability for second degree murder under the natural and probable consequences theory. (*Gentile, supra,* 10 Cal.5th at pp. 848–849.)

not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. (See *Gentile, supra*, 10 Cal.5th at p. 843.)

Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), "the court may deny the petition without prejudice to the filing of another petition . . . ." (§ 1170.95, subd. (b)(2).)

Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made "a prima facie showing" for relief. (§ 1170.95, subd. (c).)

If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) At the hearing stage, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

## C. Section 1170.95 Petition

On January 7, 2019, Lewis filed a petition complying with section 1170.95 in the sentencing court, wherein he requested counsel. On February 4, 2019, the superior court, without appointing counsel, summarily denied the petition by minute order. The court concluded, in pertinent part, that Lewis did not make a prima facie case for resentencing under Senate Bill 1437 because, based on the *Lewis I* court's decision on direct appeal, he "would still be found guilty with a valid theory [direct aiding and abetting] of first degree murder."

Lewis appealed. The Court of Appeal affirmed the trial court's summary denial. (*Lewis II*, *supra*, 43 Cal.App.5th 1128.) The court rejected Lewis's claims that the trial court erred by not appointing counsel and relying on the record of conviction to summarily deny his petition. We granted Lewis's petition for review.

## II. APPOINTMENT OF COUNSEL

### A. Principles of Statutory Interpretation

The proper interpretation of a statute is a question of law we review de novo. (*United Educators of San Francisco etc. v. California Unemployment Ins. Appeals Bd.* (2020) 8 Cal.5th 805, 812; *People v. Prunty* (2015) 62 Cal.4th 59, 71.) " ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) " '[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*People v. Arroyo* (2016) 62 Cal.4th 589, 595 (*Arroyo*).)

### B. Language and Structure of Section 1170.95, Subdivision (c)

The two issues before us turn on the interpretation of subdivision (c) of section 1170.95. Subdivision (c) provides in full: "The court shall review the petition and determine if the petitioner has made *a prima facie showing that the petitioner falls within the provisions of this section.* If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor

response is served. These deadlines shall be extended for good cause. If the petitioner makes *a prima facie showing that he or she is entitled to relief*, the court shall issue an order to show cause." (§ 1170.95, subd. (c), italics added.)

The Court of Appeal and the People read subdivision (c)'s two references to "a prima facie showing" to require two distinct, sequential inquiries: one "that petitioner 'falls within the provisions' of the statute," and a second " 'that he or she is entitled to relief.' (§ 1170.95, subd. (c).)" (*Lewis II*, *supra*, 43 Cal.App.5th at p. 1140; see also *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*) [agreeing with *Lewis II* and describing in greater detail subdivision (c)'s "two-step process for the court to determine if an order to show cause should issue"], review granted Mar. 18, 2020, S260493.) By chronologically parsing out each sentence of subdivision (c), the Court of Appeal concluded that a petitioner is only entitled to counsel, if requested, after successfully making the first prima facie showing. (*Lewis II*, at p. 1140.)

We reject this interpretation of section 1170.95, subdivision (c). Rather, we read subdivision (c) to describe only a single prima facie showing. (Accord *People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, S264684 (*Cooper*); *People v. Daniel* (2020) 57 Cal.App.5th 666, 673–674, review granted Feb. 24, 2021, S266336 (*Daniel*) [same panel "adher[ing] to our holding in *Cooper*"].) Considering subdivision (c)'s language in the context of section 1170.95 as a whole (see *Arroyo*, *supra*, 62 Cal.4th at p. 595), subdivision (c) clearly describes a single process. More specifically, the first sentence of subdivision (c) does not require a distinct prima facie showing before the appointment of counsel. Under its natural reading, " '[t]he first sentence [of subdivision (c)] states the rule' " and

" '[t]he rest of the subdivision establishes the process for complying with that rule.' " (*Cooper*, at p. 115, quoting *People v. Tarkington* (2020) 49 Cal.App.5th 892, 917 (dis. opn. of Lavin, J.), review granted Aug. 12, 2020, S263219 (*Tarkington*); accord *Daniel*, at pp. 673–674, review granted.)

Such a reading does not "disregard" the first sentence of subdivision (c), as the People contend. Rather, the first sentence provides the rule: the court reviews the petition to determine "if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The last sentence describes what the court shall do if a petitioner makes a prima facie showing, namely, issue an order to show cause. This reading is in harmony with the remainder of section 1170.95. The People's interpretation of the first sentence of subdivision (c), by contrast, endeavors to create a separate initial review process, but the initial review process is clearly laid out immediately prior in subdivision (b)(2), which permits a court to deny a noncomplying petition "without prejudice." (§ 1170.95, subd. (b)(2).) Thus, to read the first sentence of subdivision (c) to thereafter provide for another pre-briefing review by the court, without the assistance of counsel, conflicts with the overall structure of section 1170.95. (See *People v. Valencia* (2017) 3 Cal.5th 347, 357–358 ["But '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible' "].)

Notably, whether a petitioner "requests the appointment of counsel" is part of the information that must be included in a petition for it to satisfy the court's subdivision (b)(2) review. (§ 1170.95, subd. (b)(1)(C); see also subd. (b)(2).) Subdivision

(c)'s language regarding the appointment of counsel is mandatory: "If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner." (§ 1170.95, subd. (c), italics added.) The combined meaning is clear: petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition.

Nonetheless, the People and the Court of Appeal adopt a position that interprets subdivision (c) to mean that the court shall appoint counsel only after a first-step prima facie showing is made, and then counsel may assist the petitioner in making a second-step prima facie showing. But that is not what the subdivision says. The sentence addressing counsel simply states that if petitioner asks for counsel, counsel "shall" be appointed. (§ 1170.95, subd. (c).) It noticeably does not say that counsel will be appointed only after some "first-step" prima facie showing is made. Thus, the People's proposed reading focuses instead upon the placement of the second sentence, i.e., because the second sentence appears after a reference to a "prima facie showing" in the first sentence, this means that the Legislature intended to create a separate, first-step prima facie analysis conducted without the aid of counsel. If the first and second sentences of subdivision (c) were reversed, presumably the People's chronological argument fails. We are unwilling to place more import on the placement of the second sentence than on the actual words used in the statute, especially since, as one analyzes the implications of the People's argument, it cannot withstand scrutiny.

The People rely on *Verdugo*, which, elaborating on the reasoning in *Lewis II*, attempts to support a two-step process by underscoring that the first reference to a prima facie showing in section 1170.95, subdivision (c) uses the phrase "falls within the

provisions of this section," which *Verdugo* takes to mean "that the petitioner may be *eligible* for relief" (*Verdugo, supra,* 44 Cal.App.5th at p. 328, review granted, italics added), whereas the second reference uses the distinct phrase "a prima facie showing that he or she is *entitled* to relief" (§ 1170.95, subd. (c), italics added). (See *Verdugo,* at p. 328; see also *Tarkington, supra,* 49 Cal.App.5th at p. 897, review granted [adopting *Verdugo*'s two-step interpretation]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673–674, review granted July 8, 2020, S262481 [same]; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975–976 (*Drayton*) [same]; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177–1178, review granted June 24, 2020, S262011 [same].) This is a distinction without a difference. This argument overlooks the fact that the terms "eligibility" and "entitlement" are used interchangeably elsewhere in section 1170.95. (*Cooper, supra,* 54 Cal.App.5th at p. 120, review granted.)

Subdivision (d)(2) provides in part that "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is *eligible* to have his or her murder conviction vacated and for resentencing." (§ 1170.95, subd. (d)(2), italics added.) If entitlement is something more than eligibility, "why would a stipulation that the petitioner is merely eligible for relief obviate the need for a hearing on entitlement?" (*Cooper,* at p. 120.) As *Cooper* concluded, "[S]ection 1170.95's interchangeable references to eligibility and entitlement repudiate the notion that the concepts have different meanings." (*Cooper,* at p. 120.) It thus follows that there is no syntactic basis for interpreting subdivision (c)'s first sentence to delay petitioner's right to counsel.

The briefing schedule established by subdivision (c) also belies this "two-step" theory. The Court of Appeal and the People presume that the trial court's "first stage" prima facie review will take place before the appointment of counsel and the submission of written briefs. (See *Lewis II, supra,* 43 Cal.App.5th at p. 1140.) The People assert that "[t]he court can easily conduct the step one analysis without the prosecutor running afoul of the 60-day deadline, or the court may grant the prosecutor an extension of time." In *Tarkington,* the majority inferred from subdivision (c)'s briefing deadlines "that the Legislature simply intended to ensure that the petition is evaluated, from start to finish, in an expeditious fashion. It is to be expected that the superior court will promptly rule on eligibility; running the briefing period from the date of the petition's filing ensures that this is so, absent good cause for a longer period." (*Tarkington, supra,* 49 Cal.App.5th at p. 904, fn. 9, review granted.) But that is not what the statute says. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 ["it is well settled that we must look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent' "].)

Section 1170.95, subdivision (c) expressly requires that a prosecutor "*shall* file and serve a response within 60 days *of service of the petition* and the petitioner may file and serve a reply within 30 days after the prosecutor response is served." (§ 1170.95, subd. (c), italics added.) " '[I]f the Legislature had anticipated that the court would undertake its own review of the merits of the petition as an intermediate step before appointing counsel, it would have calculated the deadlines not from the date of service of the petition but instead from the date the court completed its initial review. And though the Legislature

required the prosecution to respond within 60 days of being served with the petition, it did not create a deadline for the court to conduct an intermediate review.'" (*Cooper*, *supra*, 54 Cal.App.5th at p. 121, review granted, quoting *Tarkington*, *supra*, 49 Cal.App.5th at p. 920 (dis. opn. of Lavin, J.), review granted, fn. omitted.) The briefing deadlines may only be extended "for good cause." (§ 1170.95, subd. (c).)

Though the structure envisioned by the People and the Court of Appeal assumes that the trial courts will "promptly rule on eligibility" (*Tarkington*, supra, 49 Cal.App.5th at p. 904, fn. 9, review granted), there is nothing in the statute that compels them to do so and, predictably, our busy trial courts may be unable to turn to these petitions in less than 60 days. There is no time limit by which the trial court must make a ruling. This means that courts can rule, and have ruled, on the so-called first-step prima facie review after 60 days have passed. The effect of the People's interpretation is that the prosecution may be compelled to file its response before the court makes its "first-step" prima facie determination. Creating this artificial first step (which is unencumbered by any time limits) means that the trial court can, and sometimes does, wait for the prosecution's response and then deny the petition before the petitioner even files a reply. Furthermore, since the briefing deadlines are triggered by the filing of the petition, the parties will likely begin preparing their briefs at the same time the court is conducting its first-step review, the result of which is that the court and the parties may be duplicating their efforts by conducting essentially the same type of review of the same documents at the same time. Moreover, if the trial court awaits full briefing on its first-step prima facie review and then decides that the petitioner has met his or her burden, the subdivision, by its

terms, does not contemplate any additional briefing for the second-step prima facie review. While the People propose that the trial courts can extend time for the filing of the response, and perhaps courts may order supplemental briefing for the second-step prima facie review, these options deviate considerably from the briefing schedule set out by the statute itself.

In addition, the People assume (as they must in order to avoid the illogical conclusion that the petitioner must file a written reply to the prosecution's response without the aid of counsel) that the petitioner's counsel will assist in preparing a reply. But, again, there is no time limit for the trial court to conduct its so-called first step review, which means that, absent a ruling from the trial court, petitioners may be forced to file their reply briefs without the assistance of counsel. (See *Cooper*, *supra*, 54 Cal.App.5th at p. 121, fn. 8, review granted ["If the Legislature intended an initial prima facie review before the parties submitted briefing, surely a better way to ensure that a trial court conducted it promptly would be to impose a deadline on the court, not the prosecution"].) Thus, the People's interpretation risks creating a highly disorganized and uncertain briefing schedule, whereby the parties have no idea whether the court will rule before their statutory deadlines come due. This means that the parties may prepare their briefs even if the court rules before they are filed. Under our reading, the parties can be confident that the court will not act on a petition until after briefing is complete.[4]

---

[4] We recognize that, because the time for briefing runs from the "service of the petition," any delays in appointing counsel

All of this, of course, lays bare the fallacy of the so-called first-step prima facie framework:  because the briefing schedule is tied to the filing of the petition itself and because there is no time limit by which courts must make this purported "first step" analysis, section 1170.95, subdivision (c) does not envision a structure by which courts can make an initial determination without briefing and without the appointment of counsel. Instead, there is a much more logical interpretation of this provision, and it is the one we adopt here:  a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one (not two) prima facie determination.[5]

The People's interpretation also raises serious questions about how to distinguish between the so-called first-step and second-step prima facie analyses.  The Court of Appeal

could pose an obstacle to a represented petitioner submitting a reply within the required timeframe.  (§ 1170.95, subd. (c).)  As a general matter, a trial court should afford both parties the opportunity to brief the question of a petitioner's eligibility for relief and may extend the briefing deadlines "for good cause" as necessary to ensure that such an opportunity is meaningful. (§ 1170.95, subd. (c).)

[5]  In concluding that the trial court could review the record of conviction before appointing counsel, the Court of Appeal analogized to section 1170.18 (enacted by Proposition 47 in 2014) and section 1170.126 (enacted by Proposition 36 in 2012). (See *Lewis II*, *supra*, 43 Cal.App.5th at pp.  1137–1138.) We find the reliance on these sections unhelpful because there are significant differences in the way the statutes are drafted. Specifically, unlike section 1170.95, neither section 1170.18 nor section 1170.126 expressly provides for the appointment of counsel or setting of a briefing schedule respecting the prima facie determination.

15

acknowledged that "[i]t is not clear from the text of subdivision (c) what, if any, substantive differences exist between" the two prima facie showings the court identified. (*Lewis II, supra,* 43 Cal.App.5th at p. 1140, fn. 10.) The Court of Appeal ultimately concluded that: "We need not decide this issue because the court properly concluded that defendant was neither within the provisions of the statute, nor entitled to relief, as a matter of law based on the record of conviction." (*Ibid.*) We share the Court of Appeal's reluctance to distinguish the "first step" prima facie review from the "second step," but we come to a different conclusion: the reason the steps sound virtually indistinguishable is because there are not two steps at all.

The People admit that "[t]he substantive question in step two is the same as in step one — whether the record of conviction shows the petitioner is ineligible for relief as a matter of law." However, they argue that the so-called steps "may be distinct in time and manner of presentation even if the legal question they pose is the same." While the People accept that there "is no textual basis" to distinguish between the steps, they posit that appointing counsel "at step two may be helpful for practical reasons." More specifically, the People argue, "at step two, 'the prosecutor may be able to identify additional material from the record of conviction not accessible to, or reviewed by, the court during its first prima facie determination (for example, jury instructions) that establish the petitioner is not eligible for relief. In a reply the petitioner, represented by counsel, may rebut the prosecutor's claim of ineligibility.' (*Verdugo, supra,* 44 Cal.App.5th at p. 330, fn. 9, review granted.)"

According to the People's argument, the substantive question in step two is the same as step one and the court may rely on precisely the same information it relied on in step one.

At core, the People's position is that the only difference between the two steps is that under the first step the trial court can act without giving petitioner an opportunity to be heard and without giving petitioner a lawyer. We disagree.

In sum, subdivision (c) does not establish an internal, threshold barrier to the appointment of counsel and the opportunity for briefing.

## C. Other Interpretive Aids

Even if we considered the language and structure of section 1170.95, subdivision (c) to be susceptible to the Court of Appeal's piecemeal reading, " 'other aids, such as the statute's purpose, legislative history, and public policy,' " support our interpretation. (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1163, quoting *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

As previously noted, Senate Bill 1437 was enacted "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Lewis points out, "section 1170.95 requires legal and factual inquiry into complex legal theories (felony murder, and natural and probable consequences) not easily understood by an unrepresented litigant." Appointing counsel to assist a petitioner in navigating these complex theories, upon the filing of a facially sufficient petition, promotes the reliability of section 1170.95's petitioning process and thereby advances Senate Bill 1437's stated purpose.

The Court of Appeal concluded it was "sound policy" to delay the appointment of counsel in the manner it described because it " 'would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief.' " (*Lewis II, supra*, 43 Cal.App.5th at p. 1138, quoting Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23:51(H)(1), pp. 23–150 to 23–151; accord, *Tarkington, supra*, 49 Cal.App.5th at p. 901, review granted.)

However, noncomplying petitions may be quickly screened out under subdivision (b)(2) of section 1170.95. Further, the requirement that a petition include "[a] declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a)" (§ 1170.95, subd. (b)(1)(A)) should discourage frivolous petitions. Lastly, as Lewis himself concedes, after the appointment of counsel the parties' briefing, as contemplated by subdivision (c), does not need to be extensive. (See *Tarkington, supra*, 49 Cal.App.5th at p. 925 (dis. opn. of Lavin, J.), review granted ["a brief need be no longer than the [summary] order the court prepared in this case"].) Additionally, appointed counsel may ultimately conclude that a petition is clearly meritless and recommend that the petition be withdrawn. Conversely, the parties may stipulate that the petitioner is entitled to relief.

Of course, these devices will not screen out all meritless petitions. Subdivision (b)(2), for example, only screens out noncomplying petitions, not petitions that lack substantive merit. Similarly, despite the declaration requirement under

subdivision (b)(1)(A), some petitioners may nonetheless file petitions even when they are not eligible for relief. Section 1170.95 is clearly not without expense. But it is for the Legislature to balance costs with rewards and, here, the Legislature appears to have concluded that the benefits to be gained from providing broad access to counsel, in order to ensure that all those entitled to resentencing are able to obtain relief, outweigh the costs of appointing counsel in many cases where no relief will prove available.

Indeed, the legislative history of Senate Bill 1437 demonstrates the Legislature's full awareness of its potential impact on judicial resources. The Senate and Assembly Appropriations Committees examined the potential fiscal impact of Senate Bill 1437. They acknowledged that Senate Bill 1437 could lead to "potentially-major costs in the millions of dollars" for courts to process petitions and hold resentencing hearings, as well as "potentially-major costs in the hundreds of thousands of dollars to the millions of dollars" to allow the Department of Corrections and Rehabilitation to transport inmates to resentencing hearings. (Sen. Com. on Appropriations, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 1; see also Assem. Com. on Appropriations, Analysis of Sen. Bill 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill 1437 (2017–2018 Reg. Sess.) as amended May 29, 2018, p. 6.) Senate Bill 1437 would also entail "[u]nknown costs to county District Attorneys' Offices and Public Defenders' Offices to litigate petitions for resentencing. These costs likely would be reimbursable by the state, the extent to which would be determined by the Commission on State Mandates." (Sen. Com.

on Appropriations, Analysis of Sen. Bill 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 1.)

On the other hand, there could also be significant cost savings for the Department of Corrections and Rehabilitation. The Senate Appropriations Committee observed that, depending on the number of individuals who could successfully petition for reduced sentences under Senate Bill 1437, the proposed legislation could result in "[u]nknown, potentially-major out-year or current-year savings in reduced incarceration expenses," and "[w]hen these averted admissions are compounded, the savings could reach into the millions of dollars annually." (Sen. Com. on Appropriations, Analysis of Sen. Bill 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 1.)

In apparent recognition of the expenses accompanying its implementation, Senate Bill 1437 provides: "If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code." (Stats. 2018, ch. 1015, § 5.)

This legislative background shows the Legislature did, in fact, engage in the exact type of cost-benefit assessment and policy determination it was entitled to make. (See *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 ["The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function"].)

Permitting trial courts to summarily deny relief before the appointment of counsel would not significantly conserve judicial resources. "[E]ven assuming the practice leads to short-term efficiencies, those savings are a false economy that shifts work from trial counsel to appellate counsel and from the trial courts to the appellate courts." (*Tarkington, supra*, 49 Cal.App.5th at p. 925 (dis. opn. of Lavin, J.), review granted.) Leaving it to an appellate court to review a summary denial, on an underdeveloped record, arguably places a greater strain on judicial resources than appointing counsel from the outset. (See *Tarkington*, at p. 926 ["Cases in which the prosecution assembles the record below and writes a short explanatory brief before defense counsel submits on the record are much less time consuming on appeal than cases like this one, in which we cannot even determine the basis for the trial court's decision"].)

Indeed, the two-part process contemplated by the Court of Appeal can create unnecessary inefficiencies. It can be inefficient to ask the trial court to make these threshold legal determinations without the aid of briefing. It is inefficient to expect prosecutors to start briefing the question of whether a petitioner may be eligible for relief under section 1170.95 without knowing if the trial court may simply issue a "first-step" prima facie denial before their brief is filed. And it is inefficient to ask our Courts of Appeal to review these "first-step" prima facie determinations, all without the aid of a fully developed record below.

Consider a situation where the trial court, without briefing, summarily denies a petition, but does so on an improper basis. Petitioner then obtains counsel on appeal who must argue that the trial court made a legal error. The Court of Appeal is able to decipher the legal error (despite the absence of

a fully developed record below) and then must remand to the trial court to reassess the question of whether the record entitles the petitioner to an order to show cause. This is exactly what happened in *Cooper*. (See *Cooper*, *supra*, 54 Cal.App.5th at pp. 123–126, review granted; *id.* at p. 110 [observing that, while some documents were in the appellate record, "it is unclear what other documents the court may have considered"].) That sequence of events is far from efficient.

In sum, "other aids" resolve any conceivable ambiguity in the statutory language of section 1170.95, subdivision (c) in favor of an interpretation requiring that counsel be appointed upon the filing of a facially sufficient petition. (*Jones v. Lodge at Torrey Pines Partnership*, *supra*, 42 Cal.4th at p. 1163.)

### III. RECORD OF CONVICTION

Having concluded that a petitioner is statutorily entitled to counsel, if requested, upon the filing of a facially sufficient petition, and that subdivision (c) describes only one prima facie showing, we now turn to the question of whether a trial court can rely on the record of conviction in determining whether that single prima facie showing is made. The answer is yes. In fact, Lewis agrees that "the court may — with the benefit of advocacy for both sides — consider the record of conviction at [the prima facie] stage." In Lewis's view, appointed counsel and the prosecutor "can and should make use of the record of conviction." Notably, there is no disagreement amongst the Courts of Appeal regarding the propriety of the parties and the trial court looking at the record of conviction *after* the appointment of counsel. (See *Cooper*, *supra*, 54 Cal.App.5th at p. 122, review granted, italics added, footnote omitted [explaining that the legislative history of Senate Bill 1437 indicates "the Legislature intended for the

prosecutor, not the court, to take the lead in identifying which petitioners are not entitled to relief as a matter of law based *on the record of conviction*"]; *Daniel, supra,* 57 Cal.App.5th at p. 677, review granted ["While we agree with Daniel that a trial court may not rely on the record of conviction to deny a facially sufficient petition, he offers no reason why a court would be prohibited from relying on the record of conviction to deny a petition *after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties"]; see also *Tarkington, supra,* 49 Cal.App.5th at p. 925 (dis. opn. of Lavin, J.), review granted, italics added ["If, *based on the record of conviction* or the facts of the case, a petition is clearly meritless, the prosecutor can submit a simple brief summarizing why the petitioner is not entitled to a resentencing hearing"].)

The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. (See Stats. 2018, ch. 1015, § 1, subd. (f).)

While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, " 'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual

23

allegations were proved. If so, the court must issue an order to show cause.' " (*Drayton*, *supra*, 47 Cal.App.5th at p. 978, quoting Cal. Rules of Court, rule 4.551(c)(1)).) "[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." (*Ibid.*, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456 (*Serrano*).) "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " (*Drayton*, at p. 979, quoting *Serrano*, at p. 456.)

Appellate opinions, like *Lewis I*, are generally considered to be part of the record of conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 454–455.) However, as we cautioned in *Woodell*, the probative value of an appellate opinion is case-specific, and "it is certainly correct that an appellate opinion might not supply all answers." (*Id.* at p. 457.) In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) As the People emphasize, the "prima facie bar was intentionally and correctly set very low."

In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under subdivision (c).[6]

---

[6]     A petitioner is entitled to relief under section 1170.95 only when he or she "could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective

## IV. PREJUDICE

### A. Standard of Review

Lewis contends that a trial court's "consideration of the record of conviction in connection with a section 1170.95 petition is a 'critical stage' of the criminal process" such that the deprivation of counsel during such consideration, whether viewed as a state statutory violation or as a federal or state constitutional violation, is structural error requiring automatic reversal. We disagree.

> *1. The failure to appoint counsel was error under state statutory law only.*

There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction. (See *In re Barnett* (2003) 31 Cal.4th 466, 475 [no federal or state "constitutional right to counsel for seeking collateral relief from a judgment of conviction via state habeas corpus proceedings"]; *People v. Shipman* (1965) 62 Cal.2d 226, 232 [observing the same in the context of *coram nobis* relief]; *Pennsylvania v. Finley* (1987) 481 U.S. 551, 556, 557 [observing that "[p]ostconviction relief is even further removed from the criminal trial" and concluding that respondent had "no underlying constitutional right to appointed counsel in state postconviction proceedings"].) However, we have held that "if a

_____

January 1, 2019." (§ 1170.95, subd. (a)(3).) We are not asked to resolve what is substantively required under subdivision (a)(3); here we only address if, in assessing whether the petitioner has made a prima facie case for relief under subdivision (c), the court may consider documents in the record of conviction if they are relevant to the underlying substantive question. Our holding in this case means there is no categorical bar to consulting the record of conviction at the prima facie stage.

[habeas] petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns." (*In re Clark* (1993) 5 Cal.4th 750, 780.) When "an indigent petitioner has stated facts sufficient to satisfy the court that a hearing is required, his claim can no longer be treated as frivolous and he is entitled to have counsel appointed to represent him." (*Shipman*, at p. 232; see also *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 980–981 [due process requires appointment of counsel when defendant establishes prima facie case for postconviction relief under section 1473.7]; *People v. Rouse* (2016) 245 Cal.App.4th 292, 299 [due process right to counsel at a Proposition 47 resentencing hearing arose *after* the "[d]efendant passed the eligibility stage"].)

For the same reasons, a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process. (Accord *Daniel*, *supra*, 57 Cal.App.5th at p. 676, review granted.) At that point, the petitioner has not yet "stated facts sufficient to satisfy the court that a hearing is required," but merely endeavors to do so. (*Shipman*, *supra*, 62 Cal.2d at p. 232.) Instead, the Legislature, weighing the costs in favor of broader access to counsel (see discussion *ante*), created a purely statutory right to counsel that attaches before the issuance of an order to show cause. Thus, the trial court's failure to appoint counsel to represent Lewis was state law error only.

### 2. *The error is reviewed for prejudice under* Watson.

Typically, when an "error is purely one of state law, the *Watson* harmless error test applies." (*People v. Epps* (2001) 25 Cal.4th 19, 29; see *Watson*, *supra*, 46 Cal.2d at p. 836.)

However, state statutory error may amount to structural error if it is " 'analogous to' . . . 'the total deprivation of the right to counsel at trial.' " (*People v. Lightsey* (2012) 54 Cal.4th 668, 699 (*Lightsey*), quoting *Arizona v. Fulminante* (1991) 499 U.S. 279.)

Lewis likens the deprivation of counsel in his case to that in *Lightsey*, *supra*, 54 Cal.4th at pp. 699–700, wherein we held the trial court's failure to appoint counsel to represent a defendant during a mental competency proceeding, in violation of section 1368, was structural error. In considering the question of prejudice in *Lightsey*, we observed that, "[a]s with a pervasive Sixth Amendment violation, the statutory violation here cannot be likened to 'trial error' . . . . Attempting to assess the effect of the absence of counsel on the trial court's finding of competence is, in truth, no different than attempting to assess the effect on a jury's final verdict of the absence of counsel during a trial on substantive charges: there is no reasoned manner in which to do so because the lack of true adversarial testing denied defendant the basic procedure by which his competence should have been determined." (*Id.* at p. 701.) We further observed that permitting an individual whose mental competence is contested to self-represent and maintain his or her competence causes "a breakdown . . . in the process of meaningful adversarial testing central to our system of justice." (*Id.* at pp. 696–697.)

Lewis's reliance on *Lightsey* proves unpersuasive; no similar analogy to the "total deprivation of the right to counsel at trial" (*Lightsey*, *supra*, 54 Cal.4th at p. 699) can be made when a section 1170.95 petitioner is deprived of his right to counsel

under subdivision (c).[7]  Unlike the deprivation of counsel at a competency hearing, where a defendant's very ability to understand the nature and purpose of the criminal proceedings against him is in dispute (see *Lightsey*, *supra*, 54 Cal.4th at p. 690), the prima facie stage under subdivision (c) is not similarly adversarial.  Instead, the trial court asks only whether the petitioner can make a prima facie showing for relief; as we explained *ante*, at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in "factfinding involving the weighing of evidence or the exercise of discretion." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)  Lewis must therefore "demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result."  (*Lightsey*, *supra*, 54 Cal.4th at p. 699, citing *People v. Weaver* (2001) 26 Cal.4th 876, 968; *Watson, supra*, 46 Cal.2d at p. 836.)  More specifically, a petitioner "whose petition is denied before an order to show cause issues has the burden of showing 'it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing.' " (*Daniel*, *supra*, 57 Cal.App.5th at p. 676, review granted.)

---

[7]     Lewis makes no argument that he should be entitled to present new or additional evidence at the prima facie stage pursuant to subdivision (c) of section 1170.95.  We assume, for purposes of our analysis, that petitioners may not present new evidence at the prima facie stage.  We express no view on the merits of this assumption.

## B. The Court of Appeal Shall Determine on Remand Whether the Error Was Prejudicial

Lewis contends that "[e]ven if this Court, like the Court of Appeal in *Daniel*, [*supra*, 57 Cal.App.5th at p. 676, review granted] leaves open the possibility of harmless error, the error was not harmless in this case. Counsel could have assisted Mr. Lewis in making a prima facie factual case that his conviction for murder rests on now-forbidden natural and probable consequences reasoning." The People disagree. We decline to resolve this dispute and remand the cause to the Court of Appeal for an evaluation of prejudice under *Watson* in the first instance.

## V. DISPOSITION

We reverse the judgment of the Court of Appeal. The cause is remanded to the Court of Appeal for further proceedings consistent with the views expressed herein.

**GROBAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Lewis

_____

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 43 Cal.App.5th 1128
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S260598
**Date Filed:** July 26, 2021

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Ricardo R. Ocampo

_____

**Counsel:**

Robert D. Bacon, under appointment by the Supreme Court, for Defendant and Appellant.

Sara Ross, Stephen Dunkle and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Kate Chatfield for Senator Nancy Skinner and The Justice Collaborative Institute as Amici Curiae on behalf of Defendant and Appellant.

Sean Riordan, Summer Lacey and David Loy for American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California and American Civil Liberties Union of San Diego and Imperial Counties as Amici Curie on behalf of Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen, Idan Ivri and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Mark Zahner and Nicole C. Rooney, Deputy District Attorney (San Diego), for California District Attorneys Association as Amicus Curiae for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert D. Bacon
484 Lake Park Avenue, PMB 110
Oakland, CA 94610
(510) 834-6219

Idan Ivri
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6168