Filed 6/27/24  P. v. Smith CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B324922 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A979634) |
| v. | |
| WILLIE DEAN SMITH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ray Jurado, Judge.  Reversed and remanded.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted Willie Dean Smith (defendant) of the first degree murder and second degree robbery of Willie Gossom, Jr. (Gossom). The trial court sentenced him to 25 years to life in prison. More recently, after intervening changes in California law defining murder, defendant petitioned for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1] We consider whether the trial court erred when it summarily denied defendant's petition for resentencing without appointing him counsel and relying solely on this court's opinion resolving defendant's direct appeal.

## I.  BACKGROUND

At approximately 2:30 p.m. on November 17, 1988, Gossom was shot in the parking lot of a supper club in Los Angeles. Two weeks later, defendant was arrested and charged with the murder (§ 187) and robbery (§ 211) of Gossom. In connection with each offense, defendant was alleged to have personally used a firearm (§ 12022.5, subd. (a)).

### A.    *Defendant's Trial and Direct Appeal*[2]

According to the evidence at trial, on the afternoon of the shooting, sometime between 1:30 p.m. and 2:00 p.m., Gossom

---

[1]    Undesignated statutory references that follow are to the Penal Code.

[2]    At the Attorney General's unopposed request, we take judicial notice of the following documents from defendant's trial: excerpts from the trial transcript, the instructions given to the jury, instructions proposed by the prosecution but rejected by the trial court, and the verdict forms.

drove to the City of San Fernando and sold his Nissan 200 SX automobile to the owner of a brake shop for $1,500 in cash. Both before and after the sale of the automobile, the shop's owner saw Gossom chatting with defendant. The last time the owner saw the two men, they were standing near a brown station wagon. Minutes later, Gossom, defendant, and the brown station wagon were gone from the brake shop.

Approximately a half an hour after the brake shop owner last saw defendant and Gossom, Ricky Smith (Ricky), an eleven-year-old boy, was passing near the supper club's parking lot and heard a gunshot. Ricky turned and saw a man pointing a gun at Gossom, who staggered backwards before falling to the pavement. After Gossom collapsed, Ricky saw the man with the gun flee the scene in a brown station wagon. Other witnesses stated they saw two men leave the scene in a brown station wagon. Ricky identified defendant as the man with the gun from a photo lineup, and then later at defendant's preliminary hearing and trial.

Although Ricky and two other witnesses who were near the supper club at the time of the shooting testified they heard one gunshot, and although only one spent shell casing was found in the parking lot, an autopsy revealed Gossom had been shot three times. One bullet entered Gossom's neck from the front and exited through the top of his head. The two other bullets entered Gossom's back in close proximity to each other and each traveled downward before lodging inside Gossom's body. In the opinion of the chief forensic examiner for the County of Los Angeles, each gunshot wound was potentially fatal. The autopsy also revealed an abrasion in Gossom's lower back surrounded by bruising.

3

*1.    Contending theories at trial*

According to the prosecutor, the forensic medical evidence showed that defendant, after learning Gossom had just received $1,500 from the sale of his automobile, jabbed a gun into Gossom's back at the brake shop and forced him at gunpoint into the front passenger seat of the brown station wagon. The prosecutor argued defendant shot Gossom twice in the back from the station wagon's rear seat and robbed Gossom of the $1,500 as a "third unknown person" drove the station wagon. Once they arrived at the supper club's parking lot where defendant and his accomplice planned to dump Gossom, defendant delivered the third, "coup de grace" shot heard by Ricky and the other witnesses. Based on the evidence, the prosecutor advised the jury they could find defendant guilty of "standard murder" (i.e., "premeditated," "willful," "deliberate" murder with "malice aforethought"), or "felony murder," or both. In connection with the felony murder theory, the prosecutor told the jurors that to convict defendant they need only find that a robbery occurred and that during the robbery an unlawful killing by defendant also occurred.

Defense counsel argued defendant was not guilty of the charged offenses for two main reasons. First, the defense contended Ricky's identification of defendant as the parking lot shooter was unreliable due to inconsistencies between his statement to police, his testimony at the preliminary hearing, and his trial testimony concerning where he was when the shooting occurred and the shooter's clothing, hair style, and complexion. Second, relying on the testimony of defendant's mother and niece, defense counsel asserted his client could not

4

have been the shooter Ricky saw because defendant was at home at the time of the shooting.

## 2. *Jury instructions*

Following closing argument, the trial court instructed the jury on two theories of first degree murder: deliberate, premediated, malice murder and felony murder during the course of a robbery.

The court gave CALJIC No. 8.10 to define murder: "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of robbery is guilty of the crime of murder. . . . [¶] In order to prove such a crime, each of the following elements must be proved: [¶] 1.  A human being was killed.  [¶] 2.  The killing was unlawful, and [¶] 3.  The killing was done with malice aforethought or occurred during the commission or attempted commission of robbery.  [¶] A killing is unlawful if it was neither justifiable nor excusable."

The court gave CALJIC No. 8.21 to explain first degree felony murder:  "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of robbery is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

The trial court also instructed the jury on "unjoined perpetrators" using CALJIC No. 2.11.5: "There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which

5

defendant is on trial. [¶] Do not discuss or give any consideration to why the other person is not being prosecuted in this trial or whether [he or she] has been or will be prosecuted."

The trial court did not instruct the jury on any theory of accomplice or aider and abettor liability.

### 3. Verdict

After just three hours of deliberation, the jury found defendant guilty of first degree murder and second degree robbery.[3] For both crimes, the jury also found true defendant personally used a firearm. The trial court sentenced defendant to 13 years on the robbery conviction and a consecutive term of 25 years to life on the murder conviction.

### 4. Direct appeal

On appeal, a different division of this court modified defendant's sentence but otherwise affirmed the judgment. (*People v. Smith* (Oct. 31, 1991, B047260) [nonpub. opn.] (*Smith I*).) In summarizing the evidence at trial, the *Smith I* opinion states: "Ricky Smith, a sixth grader, was walking towards the parking lot of [the supper club] when he heard a shot. Ricky looked up to see where the sound came from and saw [defendant] shoot Gossom." Although *Smith I* discussed defendant's claim that the trial court erred by not sua sponte giving a jury instruction that he argued should have been given, it did not otherwise discuss the trial court's charge to the jury.

---

[3]     The verdict form on the murder charge did not reveal whether the jury found defendant guilty of first degree murder based on premeditation and deliberation or on felony murder.

*B.     Defendant's Petition for Resentencing*

In July 2022, defendant filed a form petition for resentencing pursuant to section 1172.6.  Defendant also asked the trial court to appoint counsel to represent him.  Attached to defendant's petition was a copy of *Smith I*.

The following month—without appointing counsel for defendant, considering briefing from any party, or holding a hearing—the trial court summarily denied the petition.  The court's minute order states:  "In the [*Smith I*] opinion, the Court of Appeal summarized the facts at trial.  Defendant was identified as the actual shooter of the victim and the jury convicted him of first degree murder.  As the actual shooter, defendant is not entitled to resentencing."

## II.  DISCUSSION

The Attorney General concedes the trial court erred when it summarily denied defendant's petition without first appointing counsel and in sole reliance on *Smith I*'s summary of the trial evidence.  The Attorney General argues the errors were harmless, however, because record of conviction materials other than the opinion in *Smith I* establish defendant was Gossom's actual killer.

In the procedural posture in which the case now reaches us, we cannot say the errors, particularly the failure to appoint counsel, were harmless.  We believe there exists a reasonable possibility appointed counsel for defendant could establish he is not ineligible for resentencing as a matter of law—for instance, by emphasizing features of the jury instructions or argument at trial that indicate defendant was likely convicted on a felony

murder theory or even by proffering new evidence casting doubt on whether defendant was indeed the victim's actual killer. (§ 1172.6, subd. (d)(3) ["The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens"].)

### A. Section 1172.6 Procedure

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

Because section 1172.6 "'requires legal and factual inquiry into complex legal theories (felony murder, and natural and probable consequences) not easily understood by an unrepresented litigant'" (*Lewis, supra*, 11 Cal.5th at 967), our Supreme Court in *Lewis* held a petitioner is "statutorily entitled to counsel, if requested, upon the filing of a facially sufficient petition." (*Id.* at 957; see also *id.* at 970 [same].) In *Lewis*'s wake, the Legislature amended the statute to codify this holding. (Stats. 2021, ch. 551, § 1; see also § 1172.6, subd. (b)(3) ["Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner"].)

In addition to appointing counsel upon the filing of a facially sufficient petition under section 1172.6, the trial court must also allow briefing from both sides and hold a hearing to determine whether the petitioner has made a prima facie showing for relief.  (§ 1172.6, subd. (c).)  In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."'  [Citations.]"  (*Lewis*, *supra*, 11 Cal.5th at 971.)  "[T]he 'prima facie bar was intentionally and correctly set very low.'"  (*Lewis*, *supra*, 11 Cal.5th at 972)

While appellate opinions are "generally considered to be part of the record of conviction" (*Lewis*, *supra*, 11 Cal.5th at 972), their usefulness may be limited; as our Supreme Court has cautioned, "'it is certainly correct that an appellate opinion might not supply all answers'" (*ibid*.).  At the time of the trial court's ruling on defendant's petition, the Legislature had already limited a lower court's consideration of a prior appellate opinion to "the procedural history of the case cited."  (§ 1172.6, subd. (d)(3), as amended by Stats. 2021, ch. 551; *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["If [the factual summary in an appellate opinion] may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage"]; *People v. Clements* (2022) 75 Cal.App.5th 276, 292 [holding that by allowing consideration of "'the procedural history'" in a prior appellate opinion, the Legislature intended to

9

prohibit consideration of "the factual summar[y]" in a prior appellate opinion].)

If the trial court, after briefing, determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c) & (d)(1).) At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) And, as already mentioned, a defendant (or the prosecution) is entitled to come forward with new evidence at a hearing held pursuant to an order to show cause. (§ 1172.6, subd. (d)(3); see also *People v. Smith* (2020) 49 Cal.App.5th 85, 96 ["[T]he Legislature provided that a petitioner may meet his or her burden by offering new or additional evidence. Therefore, we cannot say at this stage of the proceedings that failure to appoint counsel was harmless 'given the trial evidence'; by the express terms of section 117[2.6], subdivision (d)(3), counsel is not limited to the trial evidence"].)

> B.  *The Trial Court Prejudicially Erred When It Did Not Appoint Counsel for Defendant and Relied Solely on Facts Recited in* Smith I *to Summarily Deny the Petition*

Defendant filed a facially sufficient petition. He alleged all the requirements under section 1172.6, subdivision (a) to be eligible for relief: the prosecution at his trial proceeded under a theory of felony murder (or other now-invalid theory), he was convicted of murder, and he could not now be convicted of murder

10

because of the changes the Legislature made to sections 188 and 189. (§ 1172.6, subd. (a)(1)-(3).) Under *Lewis* and section 1172.6 as amended, the trial court should have appointed counsel for defendant. In addition, the trial court erred when it summarily denied the petition without briefing or a hearing based solely on *Smith I*'s summary of the evidence at trial. (*People v. Langi* (2022) 73 Cal.App.5th 972, 979 ["In this case, the trial court treated this court's opinion in *Langi I* as conclusively establishing that the jury found appellant guilty as the actual killer. Although understandable in view of explicit statements in this court's prior opinion, the trial court erred in treating those statements as conclusive"].)

The trial court's errors were prejudicial because there is a reasonable probability appointment of counsel would have made a difference, i.e., that his petition would not have been denied without issuance of an order to show cause. (*Lewis, supra,* 11 Cal.5th at 973-974 [error in deciding not to appoint counsel is reviewed for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836].) Defendant's jury was instructed on felony murder and the prosecution argued that theory to the jury. Even looking only to the evidence at defendant's trial, there is evidence (multiple gunshots and testimony from witnesses who saw two men leave the scene of the murder) from which a factfinder could infer defendant was not the victim's actual killer.[4] Appointed counsel for defendant would

---

[4] Indeed, the jury was instructed with CALJIC No. 2.11.5 because there was evidence of an uncharged perpetrator. Though we highlight for present purposes the inferences that the trial evidence might additionally permit, that does not of course cast doubt on the factual recitation included in *Smith I*. "[I]t is

not be limited to the trial evidence, though; if given a chance to brief the matter, counsel could proffer additional evidence that might be introduced at a hearing after issuance of an order to show cause or attempt to highlight features of the instructions given to defendant's jury and explain why they do not foreclose relief as a matter of law.  In short, as this court explained in *Smith*, *supra*, 49 Cal.App.5th at page 96, "we cannot say at this stage of the proceedings that failure to appoint counsel was harmless 'given the trial evidence.'"

## DISPOSITION

The order denying defendant's section 1172.6 petition is reversed and the cause is remanded with directions to appoint counsel for defendant and to thereafter proceed consistent with section 1172.6, subdivisions (c) and (d).


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.                              LEE, J.[*]

---

axiomatic that cases are not authority for propositions not considered."  (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

[*]      Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.