Filed 8/2/22  P. v. Hill CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEANDRE MAURICE HILL,<br><br>    Defendant and Appellant. | A163477<br><br>(Alameda County Super. Ct. No. 158165) |

In 2008, a jury convicted defendant Deandre Hill of first degree murder and found true the special allegation that the murder was committed during a robbery.  (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17)(A).)[1]  Hill was sentenced to life without parole plus 10 years for personal use of a firearm (§ 12022.53, subd. (b)).  We subsequently affirmed the conviction.  (*People v. Hill* (Jan. 25, 2011, A124123 & A124244) [nonpub. opn.].)

In 2019, Hill filed a petition for resentencing under section 1170.95.  The trial court denied the petition based on its finding that Hill was a major participant in the robbery who acted in reckless disregard for human life.  Hill now appeals the denial of the resentencing petition, arguing that the trial court erred by failing, on its own motion, to consider whether Hill's

_____

[1] Further undesignated code references are to the Penal Code.

1

youth was a factor in determining whether he acted with reckless indifference to human life during the robbery.[2]  We affirm.

## BACKGROUND

### A.  *The Murder Conviction*

In January 2008, Abel Martinez Mejia was shot and killed while waiting in line at a food truck parked on an intersection in Oakland.  The cashier in the truck testified at trial that when she asked Mejia for the money for his food, a black man with his hair in little braids stepped between Mejia and the truck, grabbed Mejia, pushed him, and took out a gun.  She testified that there was another black man standing by the front of the truck who also took out a gun.  When she dropped to the floor of the truck, she heard shots close by.

The cook in the truck testified that he saw the two men driving in their own cars, parking, and then approaching the truck.  He heard one of the men say something to Mejia like, "Give me everything you have.  Everything you have."  The man grabbed Mejia by his shirt, and Mejia stepped backward with his hands up.  The cook heard shots, but could not tell who the shooter was.  He saw both cars speed off, one behind the other.

Hill and his brother Darryl were driving their respective cars on the day of the shooting.  Hill's girlfriend Nikole Meadows was in his car, and Darryl's girlfriend Salah Davis was in his brother's car.  Davis testified that Hill and his brother got out of their cars and walked together to the truck, Hill grabbed money from Mejia's hand, and then his brother shot Mejia a few seconds later.  After the shots were fired, the brothers ran back to the cars.

---

[2] Appellant's opening brief states that Hill was 19 years old at the time of the crime.  Respondent properly identifies Hill as 18 years old:  he was born in April 1989 and the crime occurred in January 2008.

Meadows told police that Hill and his brother had driven past the food truck and after one had made a U-turn, the brothers had a brief conversation before driving back to the truck. She testified that the brothers got out of their cars, walked together to the truck, and then ran back to the cars after the shooting. Meadows' mother testified that Meadows had said she saw Hill and his brother "in a commotion" trying to rob Mejia and "ended up in the shooting."

Hill testified at trial that after he and his brother had driven past the food truck, his brother stuck his arm out of the window, pointed at the truck, and made a U-turn. When his brother said, "to the truck," they drove back and parked. Hill knew his brother "had been getting in a lot of shoot-outs around that time," but thought his brother wanted "to do a purse snatch" or just get something to eat. Hill's brother had recently told him about some purse snatchings he had done, and about two occasions he had shot at people he had a conflict with.

Hill first declined to get out of the car, but did so after his brother lifted up his shirt to show a gun and told him to "come on." Hill "didn't really want to say no no more" and "knew it was something serious." Hill grabbed his own BB gun, put it in his pocket, and walked to the truck. After his brother gestured toward Mejia and Hill saw his brother reach for his gun, Hill took Mejia's money. Mejia swung his arm. Hill intended to pull out his gun to scare Mejia; before he could, he heard shots and Mejia staggered backwards. Hill drove off with his brother, stopped at a gas station, gave his brother the money, then left. Hill threw the BB gun away the next day and sold his vehicle to an automobile dismantler the next week.

Hill's brother testified at trial that he had parked by the truck and walked toward it, intending to get food. Before he reached the truck, Hill

3

snatched something from Mejia, pulled out a pistol, and shot Mejia. Mejia did not swing at Hill. Hill's brother followed Hill to the gas station, where Hill admitted that he shot Mejia, but did not give his brother any money. Hill's brother had kept four guns and ammunition at his house for Hill. He had previously witnessed Hill shoot someone at their uncle's house, and shoot at someone else on another occasion for "looking at him funny." Hill always had a gun on him. Hill had told his brother about being in "a lot" of shoot outs.

The jury convicted Hill of first degree murder (§ 187, subd. (a)) and found the felony-murder special circumstance allegation true (§ 190.2, subd. (a)(17)(A)). The jury found that Hill was armed during the robbery and personally used a firearm. (§§ 12022, subd. (a)(1), 12022.53, subd. (b).) Hill was sentenced to life in prison without parole, plus a consecutive 10-year term for the firearm use enhancement (§ 12022.53, subd. (b)), and a one-year term for the arming enhancement (§ 12022, subd. (a)(1)). We stayed the one-year term imposed pursuant to section 12022, subdivision (a)(1), and affirmed the conviction. (*People v. Hill, supra*, A124123 & A124244.)

## B. *Section 1170.95*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch,1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959); *People v. Price* (2021) 71 Cal.App.5th 1128, 1140, review granted Feb. 9, 2022, S272572.) It also enacted section 1170.95, which establishes a procedure by which a defendant

4

previously convicted of felony murder or murder under the natural and probable consequences doctrine can petition to have the conviction vacated and be resentenced. (§ 1170.95, subd. (a).)

After a petition for resentencing is filed, the trial court must determine whether the defendant has made a prima facie showing of entitlement to relief under section 1170.95. (§ 1170.95, subd. (c); *People v. Lewis, supra,* 11 Cal.5th at p. 960.) If the court determines that a prima facie showing has been made, it "shall issue an order to show cause" and "hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subds. (c)–(d)(1).) At the evidentiary hearing, the prosecution bears the burden to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. (*Id.,* subd. (d)(3).)

## C. *Hill's Petition for Resentencing*

In 2019, Hill filed a petition for resentencing under section 1170.95, alleging he had been convicted of first degree murder based on a felony-murder theory and the natural and probable consequences doctrine. The trial court appointed counsel for Hill. It found a prima facie showing had been made and issued an order to show cause.

At the hearing on the petition in August 2021, the parties agreed that the issue to be decided was whether the record of conviction established beyond a reasonable doubt that "Hill was a major participant [in the robbery] who acted with reckless indifference to human life" in accordance with the principles established by the California Supreme Court in *People v. Banks*

5

(2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  The prosecution argued that Hill was ineligible for resentencing because he was immediately present at the scene of the robbery and armed with a firearm.  Defense counsel argued that there was no evidence Hill knew his brother would be committing the robbery, and that, although Hill was in possession of a weapon, he was not "engaged in any conduct to suggest that he was also being reckless in the same way in which his brother, Darryl Hill, eventually acted when he shot the victim."  Neither party raised Hill's age as a factor for the trial court to consider.

At the conclusion of argument, the trial court denied the petition.  It found, beyond a reasonable doubt, that Hill was a major participant in the felony resulting in Mejia's murder and acted with reckless indifference to human life at the time of the crime.  As for his role as a major participant, the trial court explained that the facts showed Hill "knew that what was going on was a robbery" when he and his brother pulled up in their respective cars and went to the food truck armed with firearms.  Hill was present at the scene, and had an opportunity to prevent or interfere with the shooting, but did not do so.  As for his actions with reckless indifference to human life, the trial court cited evidence that once his brother produced a gun, Hill produced his own gun and took the money from Mejia just moments before Mejia was shot and killed.  No effort was made to assist Mejia, and Hill fled with his brother in an effort to avoid responsibility for the murder.  Hill was also aware of his brother's "propensity to not only display weapons but to use them."  The trial court thus denied relief under section 1170.95.  This appeal followed.

## DISCUSSION

An order denying a section 1170.95 petition following a hearing is reviewed for substantial evidence. (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) "The scope of our review for substantial evidence is well settled. The test is not whether the People met their burden of proving beyond a reasonable doubt that [the defendant] was ineligible for resentencing, but rather 'whether *any* rational trier of fact could have' made the same determination, namely, that '[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value[.]" (*Ibid*.) Because Hill was not the "actual killer," substantial evidence must support the trial court's finding that Hill was a "major participant" in the robbery who acted with "reckless indifference to human life." (*In re Moore* (2021) 68 Cal.App.5th 434, 445 (*Moore*).)

"In *Banks* and *Clark*, our high court derived . . . a series of factors helpful in determining whether the 'major participation' and 'reckless indifference' components of the special circumstances statute, section 190.2, subdivision (d), have been met[.]" (*People v. Price*, *supra*, 71 Cal.App.5th at p. 1140.) Among the factors which *Banks* found "may play a role in determining whether a defendant's culpability is sufficient [under section 190.2, subd. (d)] . . . are these: What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a

7

particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

The *Banks* factors are "highly relevant" to determining whether a defendant also acted with reckless indifference for human life (*In re Loza* (2017) 10 Cal.App.5th 38, 52), as are the factors enumerated in *Clark*: (1) knowledge of weapons, and use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony; (4) knowledge of a cohort's likelihood of killing; and (5) efforts to minimize the risks of the violence during the felony (*Clark, supra,* 63 Cal.4th at pp. 618–623.) Courts must analyze the totality of circumstances to determine whether a defendant acted with reckless indifference to human life. (*In re Scoggins* (2020) 9 Cal.5th 667, 676.) " ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Id.* at p. 677.)

Hill does not challenge the trial court's application of the *Banks* and *Clark* factors to support its finding that he was a major participant in the robbery. The sole issue he raises on appeal is whether his "resentencing hearing was fundamentally unfair because counsel never raised and the trial court never considered the issue of [his] youth and how it affected the question of reckless indifference." Hill cites *Moore, People v. Harris* (2021) 60 Cal.App.5th 939, *People v. Ramirez* (2021) 71 Cal.App.5th 970, and *In re Harper* (2022) 76 Cal.App.5th 450 for the proposition that a defendant's youth is a factor which must be considered in determining whether the defendant acted with reckless indifference under *Banks* and *Clark*. Without reaching the merits, we conclude that Hill's failure to raise any youth-related arguments in his section 1170.95 petition or at the hearing forfeits the issue on appeal.

" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' " (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054.) A party must raise the issue at such time "when the trial court could have remedied the alleged shortcoming." (*People v. Fuiava* (2012) 53 Cal.4th 622, 653.) " 'Fairness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' " (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567.) We see no reason why this long-established rule should not apply at a section 1170.95 hearing.

Hill argues by analogy to *People v. Panozo* (2021) 59 Cal.App.5th 825, that he has not forfeited the issue because the record establishes that the court was unaware of its duty to consider Hill's youth when rendering its decision on the section 1170.95 petition. *Panozo* does not support Hill's position. In *Panozo,* the defendant presented evidence regarding his prior military service and resulting posttraumatic stress syndrome (PTSD) and alcohol abuse at a sentencing hearing in support of his request to participate in Veteran's Court as a term of probation. (*Panozo*, at p. 829.) In pronouncing judgment, the court discussed the aggravating and mitigating circumstances listed in the probation report, but did not mention the defendant's military service. (*Id.* at p. 831.) The People argued that the defendant's failure to object when the court pronounced the sentence waived the argument that the trial court had failed to comply with sections 1170.9 and 1170.91. (*Panozo*, at p. 840.) Given that the plain language of sections 1170.9 and 1170.91 "unambiguously *obligate* a sentencing court to consider a defendant's service-related . . . conditions in making discretionary sentencing choices," and that "by all indications the court was unaware that it was

9

*required* to consider this mitigating factor when it denied probation and imposed a three-year prison term," *Panozo* concluded that the issue had not been forfeited. (*Panozo*, at pp. 828, 836, 840.)

A hearing on a section 1170.95 petition requires the trial court, sitting as a trier of fact, to decide "whether the petitioner committed murder under a still-valid theory." (*People v. Clements* (2022) 75 Cal.App.5th 276, 294.) Unlike the sentencing statutes at issue in *Panozo,* section 1170.95 does not identify any specific factors which the trial court is required to consider in determining whether a petitioner is entitled to relief. The other cases cited by Hill all involved defendants who, unlike Hill, were minors at the time of the offenses. (*Moore, supra,* 68 Cal.App.5th at pp. 439–440 [defendant was 16 years old at time of parking lot robbery that resulted in murder]; *People v. Harris, supra,* 60 Cal.App.5th at pp. 945–946 [defendant was 17 years old when he participated in arson that led to death of two children]; *People v. Ramirez, supra,* 71 Cal.App.5th 970 [defendant was 15 years old at time of carjacking]; *In re Harper, supra,* 76 Cal.App.5th at pp. 453–454 [defendant was 16 years old when he participated in store robbery].) If it was Hill's contention that, at age 18, he lacked " ' "the experience, perspective, and judgment" ' to adequately appreciate the risk of death posed by his criminal activities" (*Moore,* at p. 454, citing *J.D.B. v. North Carolina* (2011) 564 U.S. 261, 272; *Miller v. Alabama* (2012) 567 U.S. 460, 477), it was his burden to present this information to the judge considering his section 1170.95 petition. *Panozo* is distinguishable because the defendant in that case *did* raise the issue of his military service at the sentencing hearing. Hill acknowledges that he never asked the trial court to consider whether his youth was a factor in determining whether he acted with reckless indifference to human life. We thus conclude that Hill forfeited the issue of whether his age should have

been evaluated as a factor in the *Banks/Clark* analysis at the section 1170.95 hearing.

## DISPOSITION

The order denying Hill's section 1170.95 petition is affirmed.

_____
Mayfield, J.*

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

*People v. Hill* (A163477)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12