Filed 10/4/24  P. v. Adger CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE DWAYNE ADGER,<br><br>    Defendant and Appellant. | B330380<br><br>Los Angeles County<br>Super. Ct. No. KA103542 |

APPEAL from an order of the Superior Court of Los Angeles County, Rob B. Villeza, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Heidi Salerno and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

—————————

Lawrence Dwayne Adger appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6.[1]  We affirm because the record of conviction establishes Adger is ineligible for resentencing as a matter of law.

## FACTS AND PROCEDURAL BACKGROUND

### 1.  *A sole perpetrator shoots the victim*

As the case resolved before trial, we take our facts from the testimony at Adger's preliminary hearing.[2]

On October 24, 2013, around 9:40 p.m., Los Angeles Fire Department firefighter Jeffrey Darney was in his fire truck on Caswell Avenue in Pomona when he heard what he thought were fireworks.  He turned around and "saw that it was actually somebody shooting somebody else."  The shooter was holding a gun, "physically pointing the gun at the other gentleman and shooting."  Darney first heard two shots; then after he turned he "heard maybe another four or five after that as [he] was watching."

The shooter ran south on Caswell.  The fire truck also went south on Caswell, then turned on Holt.  Darney saw the shooter run "across a big patch of grass."  The shooter "eventually caught up with" the fire truck, and "was, basically, running right next

---

[1]     References to statutes are to the Penal Code.  Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

[2]     We provide this summary only for background.  As discussed below, "we need not credit the truth of any fact in the preliminary hearing transcript" to decide this appeal.  (See *People v. Mares* (2024) 99 Cal.App.5th 1158, 1167 (*Mares*), review granted May 1, 2024, S284232.)

to [Darney] for about . . . several strides."  The truck sped up. The shooter "then proceeded to run right past the back of [Darney's] truck where [he] was sitting and ran past [the firefighters] across Holt."  He then went across the street.

At the preliminary hearing, Darney identified Adger as "[t]he person who was firing the gun."

## 2. *The charges and plea agreement*

The People charged Adger with the attempted willful, deliberate, and premeditated murder of the shooting victim, Jose Quintero.  In October 2014, Adger entered into a plea agreement with the People.  The prosecution struck the allegation that the attempted murder was willful, deliberate, and premeditated.  The prosecution added allegations that Adger personally inflicted great bodily injury on Quintero and that he committed the crime for the benefit of a criminal street gang. The parties agreed the court would sentence Adger to 20 years in the state prison:  the midterm of seven years for the attempted murder, plus three years for the personal infliction of great bodily injury, plus 10 years for the gang enhancement.

Adger completed and signed a *Tahl* waiver form.[3]  Adger initialed a box that stated, "I stipulate and agree that there is a factual basis for my plea(s) and admission(s)."  The district attorney explained all of Adger's rights to him as well as the consequences of his plea.  Adger confirmed he was entering his plea "freely and voluntarily and because [he felt] it [was] in [his] best interest to do so."  The district attorney asked Adger's counsel if he "stipulate[d] there is a factual basis for the plea

---

[3]     *In re Tahl* (1969) 1 Cal.3d 122.

3

based on the preliminary hearing transcript, the probation report, and the arrest reports." Counsel replied, "Yes."

Adger then pleaded no contest to count 1, attempted murder. The prosecutor asked him, "Do you admit that during the commission of count 1 you personally inflicted great bodily injury, in violation of section 12022.7 of the Penal Code?" Adger replied, "Yes." Adger also admitted the gang allegation. Based on Adger's admissions, the court found the personal infliction of great bodily injury and gang allegations to be true. The court sentenced Adger in accordance with his agreement with the prosecution.

### 3. *Adger's petition for resentencing*

On April 18, 2022, Adger—representing himself—filed a form petition for resentencing under section 1172.6. Adger checked boxes on the form stating (1) the information filed in his case "allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine," (2) he was "convicted of . . . **attempted murder** . . . following a trial or [he] accepted a plea offer in lieu of a trial at which [he] could have been convicted of . . . attempted murder," and (3) "[he] could not presently be convicted of . . . attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Adger also checked a fourth box that stated, "Having presented a facially sufficient petition, I request that this Court appoint counsel to represent me."

The trial court appointed counsel for Adger. The prosecution filed a response to Adger's petition, contending he was ineligible for relief, as he "was not convicted under the felony-murder rule or under the natural and probable consequences doctrine because he was the actual shooter

4

and the only theory of guilt was the defendant shot the victim with the intent to kill."

Adger's counsel filed a reply. Counsel asserted Adger had made a prima facie case by checking the three boxes on the form. Counsel noted the court was not permitted to engage in factfinding at the prima facie stage. Counsel cited *People v. Davenport* (2021) 71 Cal.App.5th 476 (*Davenport*) for the proposition that the court could not consider "facts from the preliminary hearing transcript because the defendant did not stipulate to the transcript as the factual basis for his plea." Counsel offered no suggestion as to what would or could have been the target offense had Adger been tried on a natural and probable consequences theory. Nor did counsel offer any suggestion as to how Adger may have been an accomplice to the crime or who the shooter was.

Counsel appeared before the court on April 19, 2023. Adger was not in court, nor apparently was he present by Webex.[4] The court stated it had read the People's response to Adger's petition and Adger's reply, "in addition to the documents in the case file, including the complaint,[5] the preliminary hearing transcript on January 21, 2014, records also including

---

[4] There is no indication in the record that Adger's counsel asked the court to order him out from state prison for the hearing. Nor did Adger's counsel object to proceeding in her client's absence. On appeal, Adger has not raised any issue about the court proceeding without him being present. (Cf. *People v. Basler* (2022) 80 Cal.App.5th 46, 51, 57–58 [petitioner has constitutional right to be present at evidentiary hearing conducted after order to show cause has issued].)

[5] The court presumably meant the information.

5

the *Tahl* form, the felony plea and sentencing transcript dated October 29, 2014, the probation report, and the abstract of judgment." The court asked Adger's counsel if the defense had "any other documents that it feels the court should review in addressing this issue?" Counsel replied, "No, Your Honor."

The court continued, "[I]t seems to me that the . . . thrust of the defense view is that the current state of the record, there is not sufficient documentation for the court to make a determination as a matter of law that the defendant would be guilty of [attempted] murder in order to find that the defendant is not entitled to an evidentiary hearing at this point." The court noted the defense's reliance on *Davenport*.

Defense counsel replied, "I don't really have much to add beyond what was in my briefing. But the court can't consider the facts of the case. It can only consider what was the basis of the plea . . . ." Counsel mentioned *Davenport* as well as *People v. Cooper* (2020) 54 Cal.App.5th 106.

The court and counsel discussed whether the court could rely on the transcript of the preliminary hearing. The court then asked, "Wasn't the defendant's plea also to the enhancement under 12022.7 of intentionally discharging a firearm causing GBI [*sic*]?" Neither the prosecutor nor defense counsel explained to the court that Adger had admitted he personally inflicted great bodily injury, not that he'd discharged a firearm. Defense counsel—after apparently checking her file—stated, "I don't have the specific enhancement that my client pled to." The reporter's transcript does not reflect any response by the prosecutor to the court's question.

After counsel submitted, the court ruled:

6

"Based upon the court's review of the record of conviction and specifically according to the preliminary hearing transcript, the court considers the following facts that on October 24, 2013, the defendant was identified by an eyewitness as the person who shot and wounded a rival gang member. [¶] On October 29, 2014, the defendant pleaded no contest to a violation of section 664[/]187 of the Penal Code, which is attempted murder, and for intentionally discharging a firearm causing great bodily injury [*sic*], as alleged in Penal Code section 12022.7 and a gang enhancement. . . . [¶] Based on the nature of the offense and the defendant as the sole attacker, the filed charges were not based on a theory of aiding and abetting, natural and probable consequences, or felony murder. [¶] Based on the court's review of the available court records, the court finds that the defendant has failed to satisfy his burden of making a prima facie showing that he is eligible for relief under 1172.6 of the Penal Code. [¶] These records confirm that the defendant was the sole attacker who shot and wounded a rival gang member, and the defendant during the plea said, 'No contest' to attempted murder and the intentional discharge of a gun causing great bodily injury [*sic*]. [¶] There is nothing within the

7

preliminary hearing transcript or otherwise that would suggest that someone else could have been a possible shooter.  It only identifies the defendant as the sole attacker. [¶] Thus, his conviction was not based upon some imputed theory based upon aiding and abetting, felony murder, or natural and probable consequences."

## DISCUSSION

**1.    *Governing law***

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended existing law on accomplice liability for murder " 'to ensure that murder liability is not imposed on a person who is not the actual killer . . . .' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, quoting Stats. 2018, ch. 1015, § 1(f); § 189, subd. (e)(1).)  To accomplish this goal, Senate Bill 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his individual criminal culpability.  (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)  Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, extended resentencing eligibility to individuals convicted of attempted murder under the natural and probable consequences doctrine.  (Stats. 2021, ch. 551, § 1(a).)  Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.)

8

Senate Bill 1437 also provided an avenue for a person convicted under the former law to petition the sentencing court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law.  (*People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)  If the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and hold an evidentiary hearing.  At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty under the amended law.  (§ 1172.6, subds. (c), (d)(3); *Strong*, at pp. 708–709.)

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Ibid.*)

We independently review the trial court's determination that Adger failed to make a prima facie showing.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)

**2.**   ***Adger is ineligible for resentencing as a matter of law***

a.   *In admitting that he personally inflicted great bodily injury on the victim, Adger conceded he was the actual perpetrator of the attempted murder*

Adger asserts his "petition for resentencing satisfied the statutory criteria for a prima facie showing of eligibility for relief."  He also states, "in assessing whether his resentencing

9

petition made a prima facie showing of eligibility for relief," the court may consider "readily ascertainable facts in the record of conviction," including "the explicit terms of the plea agreement, including any admissions." With that latter assertion, we agree.

Here, Adger admitted as part of his plea deal that he personally inflicted great bodily injury on the victim, Quintero, under section 12022.7. A true finding on an allegation under section 12022.7 that a defendant personally inflicted great bodily injury on the victim means that defendant is ineligible for relief under section 1172.6. (*Harden*, *supra*, 81 Cal.App.5th at pp. 47–48, 55–56.) "The natural meaning of 'personally inflicted' is that the defendant [him]self inflicted the injury." (*Id*. at p. 55. See *People v. Cole* (1982) 31 Cal.3d 568, 578–579 [under section 12022.7, "personally inflict" means those who "directly perform" the act causing physical injury].)

We recognize the trial court referred to its belief that Adger had admitted *discharging a firearm* that caused great bodily injury to the victim. The court cited the right statute—section 12022.7—but confused an allegation under section 12022.53, subdivision (d) (defendant discharged a firearm causing death or great bodily injury) with section 12022.7. The court's confusion is understandable, as firefighter Darney testified at the preliminary hearing that he saw Adger shoot Quintero. Nor did either the prosecutor or defense counsel correct the court. In any event, " '[o]n appeal, we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself.' " (*Alameda County Waste Management Authority v. Waste Connections US, Inc*. (2021) 67 Cal.App.5th 1162, 1174.)

As counsel had not cited *Harden*, we asked the attorneys to be prepared at oral argument to discuss the case. Adger's counsel

10

argued *Harden* was distinguishable because Harden went to trial and was convicted by a jury. Counsel floated a theory Adger never had raised before—not in his petition or at any time in the more than two years since; not in his briefing in the trial court nor in his briefs on appeal. Adger, counsel said, could have aided and abetted another person in an assault on the victim and, in the course of that aiding and abetting, inflicted great bodily injury on the victim. If the direct perpetrator—counsel continued —actually wanted to kill the victim, that person's malice could then have been imputed to Adger under the natural and probable consequences doctrine. When asked if there was anything in the record to support this notion that that's what happened, counsel replied, "There isn't." But, counsel, said it was a "factual scenario" within "the world of possibilities."

The deputy attorney general, in turn, when asked if *Harden* would support the denial of a petition at the prima facie stage in the absence of any reliance on the preliminary hearing testimony, replied, "So if all you had, it was totally in a vacuum, was great bodily injury, then I don't think that would be enough." Counsel stated the court could and should consider the preliminary hearing not for factfinding but rather for "fact pattern identification"—to see "what theories are available based on these facts."

Adger is correct that Harden's case had gone to trial, and the appellate court in that case discussed the jury's verdicts. However, the *Harden* court also stated:

> "At oral argument, Harden's attorney noted that in addition to being strangled, [victim] also suffered fractured ribs. Counsel asserted it was therefore possible for a juror to find this

11

> enhancement true on a theory that Harden only fractured [victim's] ribs and someone else strangled him. But Harden was not charged with assault or battery. She was tried for murder, and to find Harden guilty of murder (as instructed under CALJIC No. 8.10), each juror must have found that she was the actual killer." (*Harden, supra*, 81 Cal.App.5th at p. 55.)

Similarly, here, Adger was not charged with assault on Quintero. We find the *Harden* court's reasoning persuasive.

In any event, and assuming for argument's sake that the deputy attorney general's comments at oral argument constitute a concession that *Harden* alone is not enough, Adger is ineligible for resentencing as a matter of law for an additional reason.

b. *Nothing in the record of conviction suggests the involvement of an accomplice*

Adger contends the trial court erred in relying on the preliminary hearing transcript to deny his petition at the prima facie stage. As Adger notes, "[t]here is currently a split in authority over whether such reliance is permissible under the terms of the statute." Compare *Mares, supra*, 99 Cal.App.5th 1158; *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted Oct. 11, 2023, S281643; *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670; *People v. Nguyen* (2020) 53 Cal.App.5th 1154 with *People v. Williams* (2024) 103 Cal.App.5th 375, review granted Sept. 11, 2024, S286314; *Davenport, supra*, 71 Cal.App.5th 476; *People v. Flores* (2022) 76 Cal.App.5th 974.

One year after we filed *Patton*, Division 2 of the Fourth District Court of Appeal decided *People v. Mares*, *supra*, 99 Cal.App.5th 1158, review granted May 1, 2024, S284232. *Mares*—like Adger's case—involved a plea agreement. Facing a murder charge, Mares pleaded guilty to voluntary manslaughter with an enhancement for personal use of a deadly and dangerous weapon (a knife). He later petitioned for resentencing and the trial court found he had failed to make a prima facie showing of eligibility for relief. (*Id.* at pp. 1161–1163.)

Justice Raphael, writing for the court, summarized the testimony given at Mares's preliminary hearing. Justice Raphael stated the court "need not credit the truth of any fact in the preliminary hearing transcript." (*Mares*, *supra*, 99 Cal.App.5th at p. 1167.) The court explained, "What matters is that the record supports no theory other than those where Mares was the actual killer, acting with no accomplice." (*Ibid*.) The transcript, the court said, "shows the basis on which the district attorney pursued the murder charge against Mares. Only an actual killer theory was offered." (*Ibid*.)

Citing *Lewis*, *supra*, 11 Cal.5th at p. 972, the *Mares* court noted, "Our analysis does not violate the prohibition on factfinding or weighing evidence when considering whether the record of conviction precludes a section 1172.6 prima facie case." (*Mares*, *supra*, 99 Cal.App.5th at p. 1170.) The court concluded "only that uncontradicted facts in the record preclude Mares's assertion that Senate Bill 1437's changes mean he cannot be convicted of murder. We need not find or weigh any facts, because there are no facts to support Mares as the accomplice to another killer." (*Id.* at pp. 1170–1171.)

The same is true here. There is simply nothing in the record to suggest the involvement of an accomplice, or that the prosecutor pursued any theory other than that Adger was the actual perpetrator who acted alone and personally inflicted great bodily injury on the victim. Adger's counsel admitted as much at oral argument. (See *Mares*, *supra*, 99 Cal.App.5th at p. 1161.)

As the actual perpetrator of the attempted murder, Adger is ineligible for resentencing as a matter of law. (See *People v. Garcia* (2022) 82 Cal.App.5th 956, 969–971 [affirming denial of resentencing because record of conviction "unequivocally establishes" defendant was the sole perpetrator and actual killer]; *Harden*, *supra*, 81 Cal.App.5th at pp. 47–48, 56 [same]; see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [defendant "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"].)

## DISPOSITION

We affirm the order denying Lawrence Dwayne Adger's petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

BERSHON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.